FILED
2022 Dec-01  PM 03:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| METROPOLITAN TRANSPORTATION AUTHORITY, NEW YORK CITY TRANSIT AUTHORITY, MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, THE LONG ISLAND RAIL ROAD COMPANY, METRO-NORTH COMMUTER RAILROAD COMPANY, MTA BUS COMPANY, MTA CONSTRUCTION AND DEVELOPMENT COMPANY, STATEN ISLAND RAPID TRANSIT OPERATING AUTHORITY, <br><br> Plaintiffs, <br><br> v. <br><br> BLUE CROSS AND BLUE SHIELD OF ALABAMA; PREMERA and PREMERA BLUE CROSS, also d/b/a PREMERA BLUE CROSS BLUE SHIELD OF ALASKA; BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC.; USABLE MUTUAL INSURANCE COMPANY d/b/a ARKANSAS BLUE CROSS AND BLUE SHIELD; ANTHEM, INC. f/k/a WELLPOINT, INC. d/b/a ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, BLUE CROSS OF CALIFORNIA, BLUE CROSS OF SOUTHERN CALIFORNIA, BLUE CROSS OF NORTHERN CALIFORNIA, and BLUE CROSS BLUE SHIELD OF GEORGIA, and also doing business through its subsidiaries or divisions, including, ANTHEM HEALTH PLANS, INC. d/b/a ANTHEM BLUE CROSS BLUE SHIELD OF CONNECTICUT, ROCKY MOUNTAIN HOSPITAL & MEDICAL SERVICE INC. d/b/a ANTHEM BLUE CROSS BLUE SHIELD OF COLORADO and ANTHEM BLUE CROSS BLUE SHIELD OF NEVADA, ANTHEM INSURANCE COMPANIES, INC. d/b/a ANTHEM BLUE CROSS BLUE SHIELD OF INDIANA, ANTHEM HEALTH PLANS OF KENTUCKY, INC. d/b/a ANTHEM BLUE CROSS BLUE SHIELD OF KENTUCKY, ANTHEM HEALTH PLANS OF MAINE, INC. d/b/a ANTHEM | **AMENDED COMPLAINT** <br><br> **No. 2:22-cv-00265-RDP** <br><br> **JURY TRIAL DEMANDED** |

1

BLUE CROSS BLUE SHIELD OF MAINE,
ANTHEM BLUE CROSS BLUE SHIELD OF
MISSOURI, RIGHTCHOICE MANAGED CARE,
INC., HEALTHY ALLIANCE LIFE INSURANCE
COMPANY, HMO MISSOURI INC., ANTHEM
HEALTH PLANS OF NEW HAMPSHIRE, INC.
d/b/a ANTHEM BLUE CROSS BLUE SHIELD OF
NEW HAMPSHIRE, EMPIRE HEALTHCHOICE
ASSURANCE, INC. d/b/a EMPIRE BLUE CROSS
BLUE SHIELD, COMMUNITY INSURANCE
COMPANY d/b/a ANTHEM BLUE CROSS BLUE
SHIELD OF OHIO, ANTHEM HEALTH PLANS OF
VIRGINIA, INC., d/b/a ANTHEM BLUE CROSS
AND BLUE SHIELD OF VIRGINIA, ANTHEM
BLUE CROSS BLUE SHIELD OF WISCONSIN, and
COMPCARE HEALTH SERVICES INSURANCE
CORPORATION; CALIFORNIA PHYSICIANS'
SERVICE d/b/a BLUE SHIELD OF CALIFORNIA;
HIGHMARK HEALTH, and HIGHMARK INC. d/b/a
HIGHMARK BLUE SHIELD and HIGHMARK
BLUE CROSS BLUE SHIELD and including
HIGHMARK INC. predecessor HOSPITAL
SERVICE ASSOCIATION OF NORTHEASTERN
PENNSYLVANIA f/d/b/a BLUE CROSS OF
NORTHEASTERN PENNSYLVANIA ("BC-
NORTHEASTERN PA") (together, "HIGHMARK
BCBS"); HIGHMARK BLUE CROSS BLUE
SHIELD DELAWARE INC. d/b/a HIGHMARK
BLUE CROSS BLUE SHIELD DELAWARE;
HIGHMARK WEST VIRGINIA INC. d/b/a
HIGHMARK BLUE CROSS BLUE SHIELD WEST
VIRGINIA; CAREFIRST, INC. and its subsidiaries or
affiliates GROUP HOSPITALIZATION AND
MEDICAL SERVICES, INC., CAREFIRST OF
MARYLAND, INC., and CAREFIRST
BLUECHOICE, INC., which collectively d/b/a
CAREFIRST BLUECROSS BLUESHIELD;
GUIDEWELL MUTUAL HOLDING
CORPORATION; BLUE CROSS AND BLUE
SHIELD OF FLORIDA, INC.; HAWAII MEDICAL
SERVICE ASSOCIATION d/b/a BLUE CROSS
AND BLUE SHIELD OF HAWAII; REGENCE
BLUESHIELD OF IDAHO and BLUE CROSS OF
IDAHO HEALTH SERVICE, INC. d/b/a BLUE
CROSS OF IDAHO; CAMBIA HEALTH
SOLUTIONS, INC. d/b/a REGENCE BLUESHIELD

OF IDAHO, REGENCE BLUE CROSS BLUE
SHIELD OF OREGON, REGENCE BLUE CROSS
BLUE SHIELD OF UTAH, and REGENCE BLUE
SHIELD (WASHINGTON); HEALTH CARE
SERVICE CORPORATION, A MUTUAL LEGAL
RESERVE COMPANY, d/b/a BLUE CROSS AND
BLUE SHIELD OF ILLINOIS, BLUE CROSS AND
BLUE SHIELD OF MONTANA, including its
predecessor, CARING FOR MONTANANS, INC.,
BLUE CROSS AND BLUE SHIELD OF NEW
MEXICO, BLUE CROSS AND BLUE SHIELD OF
OKLAHOMA, and BLUE CROSS AND BLUE
SHIELD OF TEXAS; WELLMARK, INC., including
its subsidiaries and/or divisions, WELLMARK BLUE
CROSS AND BLUE SHIELD OF IOWA,
WELLMARK OF SOUTH DAKOTA, INC. d/b/a
WELLMARK BLUE CROSS AND BLUE SHIELD
OF SOUTH DAKOTA; BLUE CROSS AND BLUE
SHIELD OF KANSAS, INC.; LOUISIANA
HEALTH SERVICE & INDEMNITY COMPANY
d/b/a BLUE CROSS AND BLUE SHIELD OF
LOUISIANA; BLUE CROSS AND BLUE SHIELD
OF MASSACHUSETTS, INC.; BLUE CROSS BLUE
SHIELD OF MICHIGAN MUTUAL INSURANCE
COMPANY; AWARE INTEGRATED, INC. and
BCBSM, INC. d/b/a BLUE CROSS AND BLUE
SHIELD OF MINNESOTA; BLUE CROSS & BLUE
SHIELD OF MISSISSIPPI, A MUTUAL
INSURANCE COMPANY; BLUE CROSS AND
BLUE SHIELD OF KANSAS CITY; GOODLIFE
PARTNERS, INC.; BLUE CROSS AND BLUE
SHIELD OF NEBRASKA; HORIZON
HEALTHCARE SERVICES, INC. d/b/a HORIZON
BLUE CROSS BLUE SHIELD OF NEW JERSEY;
HEALTHNOW SYSTEMS, INC.; HEALTHNOW
NEW YORK, INC. d/b/a BLUECROSS
BLUESHIELD OF WESTERN NEW YORK and
BLUESHIELD OF NORTHEASTERN NEW YORK;
LIFETIME HEALTHCARE, INC. and EXCELLUS
HEALTH PLAN, INC. d/b/a EXCELLUS
BLUECROSS BLUESHIELD; BLUE CROSS AND
BLUE SHIELD OF NORTH CAROLINA;
NORIDIAN MUTUAL INSURANCE COMPANY
and BLUE CROSS BLUE SHIELD OF NORTH
DAKOTA; CAPITAL BLUE CROSS;
INDEPENDENCE HEALTH GROUP, INC. and

INDEPENDENCE HOSPITAL INDEMNITY PLAN,
INC. f/k/a INDEPENDENCE BLUE CROSS;
TRIPLE- S MANAGEMENT CORPORATION and
TRIPLE S-SALUD, INC.; BLUE CROSS & BLUE
SHIELD OF RHODE ISLAND; BLUE CROSS AND
BLUE SHIELD OF SOUTH CAROLINA;
BLUECROSS BLUESHIELD OF TENNESSEE,
INC.; BLUE CROSS AND BLUE SHIELD OF
VERMONT; BLUE CROSS AND BLUE SHIELD
OF WYOMING; and THE BLUE CROSS AND
BLUE SHIELD ASSOCIATION,

                              Defendants.

## I.       INTRODUCTION

1.       Plaintiffs, Metropolitan Transportation Authority (the "MTA") a public benefit corporation created pursuant to Article 5 of Title II of the Public Authorities Law of the State of New York, on behalf of its subsidiaries and affiliates, including: New York City Transit Authority ("NYCTA") and its subsidiary Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"); Triborough Bridge and Tunnel Authority ("MTA Bridges and Tunnels"); The Long Island Rail Road Company ("LIRR"); Metro-North Commuter Railroad Company ("Metro-North"); MTA Bus Company ("MTA Bus"); MTA Construction and Development Company ("MTA Construction and Development"); and Staten Island Rapid Transit Operating Authority ("SIRTOA") (collectively, "Plaintiffs"), bring this action (the "Action") against Defendants Blue Cross and Blue Shield of Alabama ("BCBS-AL"); PREMERA and Premera Blue Cross ("BC-WA"), which also does business as Premera Blue Cross Blue Shield of Alaska ("BCBS-AK"); Blue Cross and Blue Shield of Arizona, Inc. ("BCBS-AZ"); USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield ("BCBS-AR"); Anthem, Inc., f/k/a WellPoint, Inc. d/b/a Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California, Blue

Cross of Southern California, Blue Cross of Northern California (Blue Cross of California, Blue Cross of Southern California and Blue Cross of Northern California are referred to herein, together, as "BC-CA"), and Blue Cross Blue Shield of Georgia ("BCBS-GA"), and also does business through its subsidiaries or divisions, including, Anthem Health Plans, Inc. d/b/a Anthem Blue Cross Blue Shield of Connecticut ("BCBS-CT"), Rocky Mountain Hospital & Medical Service, Inc. d/b/a Anthem Blue Cross Blue Shield of Colorado ("BCBS-CO") and Anthem Blue Cross Blue Shield of Nevada ("BCBS-NV"), Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross Blue Shield of Indiana ("BCBS-IN"), Anthem Health Plans of Kentucky, Inc. d/b/a Anthem Blue CrossBlue Shield of Kentucky ("BCBS-KY"), Anthem Health Plans of Maine, Inc. d/b/a Anthem BlueCross Blue Shield of Maine ("BCBS-ME"), Anthem Blue Cross Blue Shield of Missouri,RightCHOICE Managed Care, Inc., Healthy Alliance Life Insurance Company; HMO Missouri Inc. (together, "BCBS-MO"), Anthem Health Plans of New Hampshire, Inc. d/b/a Anthem Blue Cross Blue Shield of New Hampshire ("BCBS-NH"), Empire HealthChoice Assurance, Inc. d/b/a Empire Blue Cross Blue Shield ("Empire BCBS"), Community Insurance Company d/b/a AnthemBlue Cross Blue Shield of Ohio ("BCBS-OH"), Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield of Virginia, ("BCBS-VA"), Anthem Blue Cross Blue Shield of Wisconsin, and Compcare Health Services Insurance Corporation (together, "BCBS-WI"); California Physicians' Service, d/b/a Blue Shield of California ("BS-CA"); Highmark Health, and Highmark Inc. d/b/a Highmark Blue Shield and Highmark Blue Cross Blue Shield and including Highmark Inc. predecessor Hospital Service Association of Northeastern Pennsylvania f/d/b/a Blue Cross of Northeastern Pennsylvania ("BC-Northeastern PA") (together, "Highmark BCBS"); Highmark Blue Cross Blue Shield Delaware Inc. d/b/a Highmark Blue Cross Blue Shield Delaware("BCBS-DE"), Highmark West Virginia Inc. d/b/a Highmark Blue Cross

Blue Shield West Virginia ("BCBS-WV"); CareFirst, Inc. and its subsidiaries or affiliates Group Hospitalization and Medical Services, Inc., CareFirst of Maryland, Inc., and CareFirst BlueChoice, Inc., which collectively d/b/a CareFirst BlueCross BlueShield (CareFirst, Inc., CareFirst of Maryland, Inc. and CareFirst BlueChoice, Inc. are referred to herein, together, as "BCBS-MD", and CareFirst, Inc., Group Hospitalization and Medical Services, Inc. and CareFirst BlueChoice, Inc. are referred to herein, together, as "BCBS-DC"); GuideWell Mutual Holding Corporation and Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("BCBS-FL"); Hawaii Medical Service Association d/b/a Blue Cross and Blue Shield of Hawaii ("BCBS-HI"); Blue Cross of Idaho Health Service, Inc. d/b/a Blue Cross of Idaho ("BC-ID"); Cambia Health Solutions, Inc., f/d/b/a Regence BlueShield of Idaho ("BS-ID"), Regence Blue Cross Blue Shield of Oregon ("BCBS-OR"), Regence Blue Cross Blue Shield of Utah ("BCBS-UT"), and Regence Blue Shield (in Washington) ("BS-WA"); Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross and Blue Shield of Illinois ("BCBS-IL"), Blue Cross and Blue Shield of Montana, ("BCBS-MT", including its predecessor Caring for Montanans, Inc.), Blue Cross and Blue Shield of New Mexico ("BCBS-NM"), Blue Cross and Blue Shield of Oklahoma ("BCBS-OK"), and Blue Cross and Blue Shield of Texas ("BCBS-TX"); Wellmark, Inc., including its subsidiaries and/or divisions, Wellmark Blue Cross and Blue Shield of Iowa, Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota (together, "Wellmark"); Blue Cross and Blue Shield of Kansas, Inc., also d/b/a BlueCross Blue Shield of Kansas ("BCBS-KS"); Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBS-LA"); Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS-MA"); Blue Cross Blue Shield of Michigan Mutual Insurance Company (together, "BCBS-MI"); Aware Integrated, Inc. and BCBSM, Inc., d/b/a Blue Cross and Blue Shield of Minnesota ("BCBS-MN"); Blue Cross & Blue

Shield of Mississippi, a Mutual Insurance Company ("BCBS-MS"); Blue Cross and Blue Shield of Kansas City ("BCBS-KC"); GoodLife Partners, Inc. and Blue Cross and Blue Shield of Nebraska (together, "BCBS-NE"); Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey ("BCBS-NJ"); HealthNow Systems, Inc. and HealthNow New York, Inc., together d/b/a BlueCross BlueShield of Western New York ("BCBS-Western NY") and BlueShield of Northeastern New York ("BS-Northeastern NY"); Lifetime Healthcare, Inc. and Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield (together, "Excellus BCBS"); Blue Cross and Blue Shield of North Carolina ("BCBS-NC"); Blue Cross Blue Shield of North Dakota ("BCBS-ND"); Capital Blue Cross ("Capital BC"); Independence Health Group, Inc. and Independence Hospital Indemnity Plan, Inc., and its subsidiary or division Independence Blue Cross (together, "Independence BC"); Triple-S Management Corporation and Triple S-Salud, Inc. (together, "BCBS-Puerto Rico"); Blue Cross & Blue Shield of Rhode Island ("BCBS-RI"); Blue Cross and Blue Shield of South Carolina ("BCBS-SC"); BlueCross BlueShield of Tennessee, Inc. ("BCBS-TN"); Blue Cross and Blue Shield of Vermont ("BCBS-VT"); and Blue Cross Blue Shield of Wyoming ("BCBS-WY") (collectively, the "Individual Blue Plans"); and the Blue Cross and Blue Shield Association ("BCBSA"), Defendants have, and continue to, manage, coordinate, and govern a combination in restraint of trade within the meaning of the Sherman Antitrust Act, 15 U.S.C. § 1. The combinations' members include the Blue Cross and Blue Shield health insurance plans in the United States (hereinafter the "Blue Plans"), as well as the Blue Cross Blue Shield Association ("BCBSA"), a nationwide conglomeration of the Blue Plans that, *inter alia*, sets a series of rules and procedures applicable to use of the Blue Cross and/or Blue Shield brand names (the "Blue Brands").

2.      In this case, the Blue Plans and BCBSA – who would otherwise be potential competitors on both a Blue Plan branded or non-Blue Plan branded basis – devised and agreed to a system of Exclusive Service Areas ("ESAs") which delineated the United States into geographic regions where Blue Plans other than the Blue Plan designated as the servicer for a particular region could not service that region, or otherwise engage in competition with a geographically designated Blue Plan. This had a severely limiting effect upon competition within ESAs. Such restraints on competition included, *inter alia*, competition for a nationwide or multistate account headquartered within an ESA and a National Best Efforts policy which limited the Blue Plans ability to engage in non-Blue Brands business (hereinafter referred to generally as, the "Competitive Restraints").

3.      Products offered by the Blue Plans include standard health insurance products, wherein a plan pays for or reimburses members in exchange for premiums, and administrative services only ("ASO") products, in which a plan provides services that include claims administration or access to a network of medical providers at negotiated rates in exchange for various fees charged to a self-funded account ("ASO Fees").

4.      The Blue Plans collect funds from subscribers, enrollees and self-funded accounts in the form of premiums and administrative services fees.

5.      At all times during the Relevant Period defined below, Plaintiffs offered and provided certain employees Blue-Branded Commercial Health Care Benefit Products through the Empire Plan, which is part of the New York State Health Insurance Program ("NYSHIP").

6.      Plaintiffs paid Empire BCBS ASO Fees through Plaintiffs' voluntary participation in NYSHIP. NYSHIP is a health insurance program that provides benefits coverage to Plaintiffs through the Plaintiffs' payments for ASO Fees to Empire BCBS. NYSHIP is not an entity capable of bringing suit or being sued, but rather is a program used by various governmental and quasi-

governmental entities in New York State for the procurement of health insurance for covered employees.

7.      From around 1995, Plaintiffs paid ASO Fees related to their participation in the Blue Plans, including the Empire Plan. Plaintiffs paid supra-competitive ASO Fees because of the Competitive Restraints alleged here.

8.      The Antitrust Division of the United States Department of Justice defines *per se* illegal market division as follows: "Market division or allocation schemes are agreements in which competitors divide markets among themselves. In such schemes, competing firms allocate specific customers or types of customers, products, or territories among themselves. For example, one competitor will be allowed sell to, or bid on contracts let by, certain customers or types of customers. In return, it will not sell to, or bid on contracts let by, customers allocated to the other competitors. In other schemes, competitors agree to sell only to customers in certain geographic areas and refuse to sell to, or quote intentionally high prices to, customers in geographic areas allocated to conspirator companies."[1]

9.      In connection with the multidistrict litigation from which Plaintiffs have opted out of as a litigant, the U.S. District Court for the Northern District of Alabama considered summary judgment motions pertaining to the behavior of Defendants as alleged herein and, in so doing, directed that the applicable standard of review with regard to this behavior is a *per se* standard of review. *See In re Blue Cross Blue Shield Antitrust Litig.*, 308 F.Supp.3d 1241, 1279 (N.D. Ala. 2018), *petition to appeal denied*, No. 18-90020-E, 2018 WL 7152887 (11th Cir. Dec. 12, 2018) ("Defendants' aggregation of a market allocation scheme together with certain other output restrictions is due to be analyzed under the *per se* standard of review").

---

[1] *Price Fixing, Bid Rigging, and Market Allocation Schemes: What They Are and What to Look For*, U.S. Dep't of Justice, https://www.justice.gov/sites/default/files/atr/legacy/2007/10/24/211578.pdf (last visited Dec. 1, 2022).

10.     Collectively, Defendants have engaged and continue to engage in *per se* illegal market division. Agreements to divide national markets are reached and effected in part by the Blue Cross and Blue Shield licensing agreements between each of the Blue Plans and the umbrella BCBSA organization, which is owned and controlled by the Blue Plans. This scheme is furthered through the BCBSA Membership Standards and Guidelines. Defendants have utilized their ownership and complete control of BCBSA, as well as other avenues to engage in illegal market allocation via their *per se* illegal agreements to: (1) prohibit Blue Plans from competing against one another when using the Blue Cross and/or Blue Shield brands by allocating geographical territories among the separate Blue Plans; (2) curtail the ability of the Blue Plans from competing against one another in all aspects – even when not using the Blue Cross and/or Blue Shield brands – by requiring that each Blue Plan do a certain amount of business under a Blue Cross and/or Blue Shield brand name, inside or outside of their geographic territory; and, (3) prohibit the sale of any Blue Plan to a company that is not a member of BCBSA – and thereby itself a Blue Plan – the result of which is to stop new market entrants into a Blue Plan's market.

11.     Any Blue Plan that violates the above *per se* illegal agreements is subject to penalties, including the revocation of its Blue Cross Blue Shield license and membership in BCBSA. These penalties mean the loss of use of the Blue Cross and/or Blue Shield brand names through which each Blue Plan makes the vast majority of its income, as well as the payment of a large fee to BCBSA to assist in funding the establishment of a competing health insurer.

12.     Many of the Blue Plan Defendants have established non-Blue Plan branded products that could otherwise compete with other Blue Plans, but for their *per se* illegal agreements not to compete with one another. In absence of their illegal agreements, Blue Plan Defendants could and would use their Blue brands and non-Blue brands to compete with each other throughout

respective geographical territories – without limiting business to their ESAs. These activities would result in greater competition and competitively priced ASO Fees as paid by self-funded accounts, such as those of Plaintiffs.

13.      Across the nation, each of the Blue Plans often have a high degree of market power within their ESAs. The Competitive Restraints articulated above serve to illegally enhance this market power within each ESA by curtailing competition from other Blue Plans in each individual market. This Competitive Restraint is the result of the Defendants' unlawful agreement to divvy up geographic territories nationwide between the individual Blue Plan Defendants, with the intended – and resultant – effect of limiting competition within the United States for commercial health insurance products and services.

14.      The Blue Plan Defendants' illegal agreement and requisite anticompetitive activity, which stifled or outright removed competition from the marketplace for commercial health insurance products, has prevented self-funded accounts from being offered competitive ASO Fees.

15.      These inflated ASO Fees are only possible because the market for commercial health insurance products in the Blue Plan Defendants' ESAs were subject to the Competitive Restraints outlined above. Competition in the commercial health insurance market remains impossible while the Blue Plan Defendants and Defendant BCBSA are able to enter into the aforementioned agreements which have the intention and result of restricting competition between the Blue Plans, whether by marketing Blue Plan branded or non-Blue Plan branded product offerings.

## II.      JURISDICTION AND VENUE

16.      The MTA Plaintiffs filed this Action, which is an opt-out Action against the Blue Plans and BCBSA on November 3, 2021, in the U.S. District Court for the Southern District of

New York, where the MTA is located (*MTA et al., v. Blue Cross of Blue Shield of Alabama et al.*, 1:21-cv-09101 (S.D.N.Y.) ("the Action"). The Action was then transferred to this MDL in the Northern District of Alabama. This Amended Complaint is now being filed in the Northern District of Alabama due to the Action currently proceeding in this Court. For the reasons discussed below, jurisdiction and venue are proper in the Southern District of New York.

17.    The Southern District of New York has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a), as this action arises under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) and Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1 and 3).

18.    The Southern District of New York has personal jurisdiction over Defendants pursuant to Section 12 of the Clayton Act and/or pursuant to relevant states' long-arm statutes under one or more of the following theories: (1) Each Defendant has purposefully availed itself of the privilege of conducting business activities within the United States and has the requisite minimum contacts therein because each Defendant participated in a conspiracy which injured or threatened injury to self-funded account subscribers in the United States and overt acts in furtherance of the conspiracy were committed within the United States (herein defined to include the District of Columbia and Puerto Rico); and/or (2) each Defendant has purposefully availed itself of the privilege of conducting business activities within the United States and has the requisite minimum contacts therein because each Defendant committed intentional acts that were intended to cause and did cause injury within the United States; and/or (3) each Defendant has purposefully availed itself of the privilege of conducting business activities within the United States and has the requisite contacts therein because each Defendant committed intentional acts that defendants knew were likely to cause injury within the United States; and/or (4) each Defendant has purposefully availed itself of the privilege of conducting business activities within

the United States and has the requisite minimum contacts therein because each Defendant is a party

to an anticompetitive agreement with a resident of the United States, which agreement is performed

in whole or in part within the United States; and/or (5) each Defendant has purposefully availed

itself of the privilege of conducting business activities within the United States and has the

requisite minimum contacts therein because each Defendant has committed a tort within the

relevant state, which has caused injury within the state; and/or (6) each Defendant has purposefully

availed itself of the privilege of conducting business activities within the United States and has the

requisite minimum contacts therein because each Defendant either has members within the United

States or transacts business within the relevant state.

19.     The Southern District of New York further has personal jurisdiction over

Defendants pursuant to New York Civil Practice Law and Rules ("CPLR") § 301 and/or pursuant

to New York's long-arm statute, CPLR § 302 under one or more of the following theories: (1)

Defendants transact business and/or supplied services within New York; (2) Defendants

committed a tortious act within New York by participating in an illegal, anticompetitive conspiracy

which included: (a) awareness on the part of Defendants that their participation in this conspiracy

would have effects within New York; (b) activity by Defendant co-conspirators within New York

which was to the benefit of Defendant co-conspirators outside of New York; and (c) activity by

Defendant co-conspirators in New York at the direction of, or under the control of, or at the request

of, or on behalf of Defendant co-conspirators outside of New York; (3) Defendants committed a

tortious act outside of New York which caused injury within New York by participating in an

illegal, anticompetitive conspiracy and Defendants regularly do or solicit business within New

York, or engage in another persistent course of conduct within New York, or derive substantial

revenue from services rendered within New York; (4) Defendants committed a tortious act outside

of New York which caused injury within New York by participating in an illegal, anticompetitive conspiracy and Defendants (a) expected or should reasonably have expected the conspiracy to have consequences within New York and (b) derive substantial revenue from interstate commerce; (5) Defendants purposefully availed themselves of the privilege of conducting business within New York because New York is (a) Defendants' place of incorporation or principal place of business and/or (b) Defendant conducts continuous and systematic business activities within New York; (6) Defendants purposefully availed itself of the privilege of conducting business in New York and could foresee being sued in New York; (7) Defendants expressly aimed its conduct, which caused injury within New York, at New York; (8) it is fair and reasonable for the Southern District of New York to exercise personal jurisdiction over Defendants.

20.    Venue is proper in the Southern District of New York, as provided in 28 U.S.C. § 1391(b) and (c) and in Sections 4, 12 and 16 of the Clayton Act (15 U.S.C. §§ 15, 22 and 26), because Plaintiffs are located in the Southern District of New York and because: (1) Defendants either transacted and/or impacted business in the Southern District of New York, giving rise to Plaintiffs' claims; and/or (2) Defendants are found in the Southern District of New York because they continuously do business within the Southern District of New York; and/or (3) Defendants are found in the Southern District of New York because they carry on a substantial part of their business activities within the Southern District of New York; and/or (4) there exists personal jurisdiction over Defendants within the Southern District of New York.

## III.    THE PARTIES

**Plaintiffs**

21.    **Plaintiff MTA** is North America's largest  transportation network, serving a population of 15.3 million people across a 5,000-square-mile travel area surrounding New York

City through Long Island, southeastern New York State, and Connecticut. The MTA network comprises the nation's largest bus fleet and more subway and commuter rail cars than all other U.S. transit systems combined.

22.    **Plaintiff NYCTA** is one of the largest transportation agencies in the world. NYCTA operates subways and buses in the New York City boroughs.

23.    **Plaintiff MaBSTOA** operates buses in upper Manhattan and the Bronx.

24.    **Plaintiff MTA Bridges and Tunnels** operates seven bridges and two tunnels in New York City.

25.    **Plaintiff LIRR** is the largest commuter railroad in America that services commuters between New York City and Long Island.

26.    **Plaintiff Metro-North** is the second largest commuter railroad in the nation serving commuters between New York City and certain suburban counties of New York and Connecticut.

27.    **Plaintiff MTA Bus** operates local routes in the Bronx, Brooklyn, and Queens, and express bus routes between Manhattan and the Bronx, Brooklyn, and Queens.

28.    **Plaintiff MTA Construction and Development** oversees the integration of all MTA capital planning, development and project delivery across the MTA service region including the planning, design and construction of major MTA system expansion projects.

29.    **Plaintiff SIRTOA** operates the Staten Island Railway, a rapid transit line in the New York City borough of Staten Island.

30.    Plaintiffs are employers who offer health insurance coverage and/or benefits to their employees, including the Empire Plan, also referred to as NYSHIP, the hospitalization plan portion of which is administered by Defendant Empire Blue Cross Blue Shield.

31.    From 1994, Plaintiffs paid ASO Fees related to their participation in the Blue Plans, including the Empire Plan.

32.    Plaintiffs are self-funded accounts as defined by the Rule 23(b)(3) Damages Class in *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, N.D. Ala., Master File No. 2:13-cv-20000-RDP.

33.    Plaintiffs are not Government Accounts as defined in *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2610,-2 N.D. Ala., Master File No. 2:13-cv-20000-RDP, ¶hh, at 8.

34.    Plaintiffs are not required by law to provide any health care coverage approved, selected, procured, sponsored or purchased by the State of New York to its employees. (*Id.)*

35.    Plaintiffs submitted a letter via email to class counsel letter to class counsel Boies Schiller Flexner LLP and Hausfeld LLP on July 6, 2021 to confirm class membership. (Ex. B)

> The MTA seeks confirmation only because, during the Settlement Class Period, it voluntarily chose to offer and provide certain of its employees Blue-Branded Commercial Health Care Benefit Products through the Empire Plan, which is part of the New York State Health Insurance Program. To be clear, although the Empire Plan is made available by the State of New York, the MTA voluntarily uses the Empire Plan; the MTA is not required to do so. While the MTA thus believes that it is not a Government Account, it seeks confirmation now, prior to the July28, 2021 opt out deadline, to avoid confusion down the road. (*See* Ex A).

36.    Plaintiffs received confirmation as a class member from class counsel Adam Shaw of Boies Schiller and BCBS counsel via email on July 26, 2021:

> In response to the question raised in your letter of July 6, 2021, we consulted with counsel for Empire BlueCross BlueShield ("Empire"). Empire agrees that the MTA accounts covered through the Empire Plan (the New York State Health Insurance Program) are not government accounts and thus remain members of the class. (*See* Ex, B)

37.    The Relevant Period applicable to the claims in this Amended Complaint runs from

1995, when Plaintiffs first procured commercial health insurance services from Defendant Empire Blue Cross Blue Shield, through the present.

38.     On July 27, 2021, Plaintiffs timely submitted an exclusion request and became opt-outs from the Rule 23(b)(3) Damages Class in *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, N.D. Ala., Master File No. 2:13-cv-20000-RDP.

**Defendants**

39.     **Defendant BCBSA** is a corporation organized under the state of Illinois and headquartered in Chicago, Illinois. It is owned and controlled by thirty-six (36) health insurance plans that operate under the Blue Cross and Blue Shield trademarks and trade names. BCBSA was created by these plans and operates as a licensor for these plans. Health insurance plans operating under the Blue Cross and Blue Shield trademarks and trade names provide health insurance coverage for approximately 100 million – or more than one in three – Americans. A BCBS licensee is the largest health insurer, as measured by number of subscribers, in forty-four (44) states.

40.     The principal headquarters for BCBSA is located at 225 North Michigan Avenue, Chicago, IL 60601.

41.     BCBSA has contacts with all 50 States, the District of Columbia, and Puerto Rico by virtue of its agreements and contacts with the Individual Blue Plans. In particular, BCBSA has entered into a series of license agreements with the Individual Blue Plans that control the geographic areas in which the Individual Blue Plans can operate on either a Blue-branded or non-Blue-branded basis. These agreements are a subject of this Amended Complaint.

42.     **Defendant Empire BCBS** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Eastern and Southeastern New York. Like other Blue Cross and Blue Shield plans nationwide, Empire BCBS is the largest health insurer, as

measured by number of subscribers or enrollees within its Service Area, which is defined as the 28 counties of Eastern and Southeastern New York state. Empire BCBS likewise provides ASO services to self-funded accounts throughout its Service Area, including Plaintiffs.

43.   The principal headquarters for Empire BCBS is located at One Liberty Plaza, New York, NY 10006. Empire BCBS does business in each county in New York.

44.   **Defendant BCBS-Western New York** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Western New York. Like other Blue Cross and Blue Shield plans nationwide, BCBS-Western New York is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as Western New York state. BCBS-Western New York likewise provides ASO services to self-funded accounts throughout its Service Area.

45.   The principal headquarters for BCBS-Western New York is located at 257 West Genesee Street, Buffalo, NY 14202. BCBS-Western New York does business in a number of counties in Western New York.

46.   **Defendant BS-Northeastern New York** is the health insurance plan operating under the Blue Shield trademark and trade name in Northeastern New York. Like other Blue Cross and Blue Shield plans nationwide, BS-Northeastern New York is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as 13 counties in Northeastern New York. BS-Northeastern New York likewise provides ASO services to self-funded accounts throughout its Service Area.

47.   The principal headquarters for BS-Northeastern New York is located at 257 West Genesee Street, Buffalo, NY 14202. BS-Northeastern New York does business in 13 counties in Northeastern New York.

48.    **Defendant Excellus BCBS** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in central New York. Like other Blue Cross and Blue Shield plans nationwide, Excellus BCBS is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as 31 counties in central New York. Excellus BCBS likewise provides ASO services to self-funded accounts throughout its Service Area.

49.    The principal headquarters for Excellus BCBS is located at 165 Court Street, Rochester, NY 14647. Excellus BCBS does business in each county in the 31 counties of central New York.

50.    Empire BCBS, BCBS-Western New York, BS-Northeastern New York, and Excellus BCBS currently exercise market power in the commercial health insurance market throughout their respective service areas of New York. As of 2010, at least 67 percent of the New York residents who subscribe to or are enrolled in full-service commercial health insurance are subscribers or enrollees of these New York Individual Blue Plans.

51.    Empire BCBS, BCBS-Western New York, BS-Northeastern New York, and Excellus BCBS have led the way in increasing premiums in their respective Service Areas.

52.    **Defendant BCBS-AL** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in the state of Alabama. Like many other Blue Cross and Blue Shield plans nationwide, BCBS-AL is the largest health insurer, as measured by number of subscribers and enrollees, within its Service Area, which is defined as the state of Alabama. BCBS-AL likewise provides ASO services to self-funded accounts throughout Alabama.

53.    The principal headquarters for BCBS-AL is located at 450 Riverchase Parkway East, Birmingham, AL 35244. BCBS-AL does business in each county in the state of Alabama.

54.   **Defendant BCBS-AK** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Alaska. Like many other Blue Cross and Blue Shield plans nationwide, BCBS-AK is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Alaska. BCBS-AK likewise provides ASO services to self-funded accounts throughout Alaska.

55.   The principal headquarters for BCBS-AK is located at 2550 Denali Street, Suite 1404, Anchorage, AK 99503. BCBS-AK does business in each county in Alaska.

56.   **Defendant BCBS-AR** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Arkansas. Like many other Blue Cross and Blue Shield plans nationwide, BCBS-AR is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Arkansas. BCBS-AR likewise provides ASO services to self-funded accounts throughout Arkansas.

57.   The principal headquarters for BCBS-AR is located at 601 S. Gaines Street, Little Rock, Arkansas, 72201. BCBS-AR does business in each county in Arkansas.

58.   **Defendant BCBS-AZ** the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Arizona. Like many other Blue Cross and Blue Shield plans nationwide, BCBS-AZ is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Arizona. BCBS-AZ likewise provides ASO services to self-funded accounts throughout Arizona.

59.   The principal headquarters for BCBS-AZ is located at 2444 West Las Palmaritas Drive, Phoenix, AZ 85021. BCBS-AZ does business in each county in Arizona.

60.   **Defendant BC-CA** is the health insurance plan operating under the Blue Cross trademark and tradename in California. Like many other Blue Cross and Blue Shield plans

nationwide, BC-CA is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of California. BC-CA likewise provides ASO services to self-funded accounts throughout California.

61.     The principal headquarters for BC-CA is located at One Wellpoint Way, Thousand Oaks, CA 91362. BC-CA does business in each county in California.

62.     **Defendant BS-CA** is the health insurance plan operating under the Blue Shield trademark and tradename in California. Like many other Blue Cross and Blue Shield plans nationwide, BS-CA is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of California. BS-CA likewise provides ASO services to self-funded accounts throughout California.

63.     The principal headquarters for BS-CA is located at 50 Beale Street, San Francisco, CA 94105-1808. BS-CA does business in each county in California.

64.     **Defendant BCBS-CO** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Colorado. Like other Blue Cross and Blue Shield plans nationwide, BCBS-CO is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Colorado. BCBS-CO likewise provides ASO services to self-funded accounts throughout Colorado.

65.     The principal headquarters for BCBS-CO is located at 120 Monument Circle, Indianapolis, IN 46204. BCBS-CO does business in each county in Colorado.

66.     **Defendant BCBS-CT** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Connecticut. Like other Blue Cross and Blue Shield plans nationwide, BCBS-CT is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Connecticut. BCBS-CT

likewise provides ASO services to self-funded accounts throughout Connecticut.

67.     The principal headquarters for BCBS-CT is located at 370 Bassett Road, North Haven, CT 06473. BCBS-CT does business in each county in Connecticut.

68.     **Defendant BCBS-DE** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Delaware. Like other Blue Cross and Blue Shield plans nationwide, BCBS-DE is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Delaware. BCBS-DE likewise provides ASO services to self-funded accounts throughout Delaware.

69.     The principal headquarters for BCBS-DE is located at 800 Delaware Avenue, Wilmington, DE 19801. BCBS-DE does business in each county in Delaware.

70.     **Defendant BCBS-FL** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Florida. Like other Blue Cross and Blue Shield plans nationwide, BCBS-FL is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Florida. BCBS-FL likewise provides ASO services to self-funded accounts throughout Florida.

71.     The principal headquarters for BCBS-FL is located at 4800 Deerwood Campus Parkway, Jacksonville, FL 32246. BCBS-FL does business in each county in Florida.

72.     **Defendant BCBS-GA** is the health insurance plan operating causing supra-competitive price under the Blue Cross and Blue Shield trademarks and trade names in Georgia. Like other Blue Cross and Blue Shield plans nationwide, BCBS-GA is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Georgia. BCBS-GA likewise provides ASO services to self-funded accounts throughout Georgia.

73.     The principal headquarters for BCBS-GA is located at 3350 Peachtree Road NE, Atlanta, GA 30326. BCBS-GA does business in each county in Georgia.

74.     **Defendant BCBS-HI** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Hawaii. Like other Blue Cross and Blue Shield plans nationwide, BCBS-HI is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Hawaii. BCBS-HI likewise provides ASO services to self-funded accounts throughout Hawaii.

75.     The principal headquarters for BCBS-HI is located at 818 Keeaumoku Street, Honolulu, HI 96814. BCBS-HI does business in each county in Hawaii.

76.     **Defendant BC-ID** is the health insurance plan operating under the Blue Cross trademark and trade name in Idaho. Like other Blue Cross and Blue Shield plans nationwide, BC-ID is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Idaho. BC-ID likewise provides ASO services to self-funded accounts throughout Idaho.

77.     The principal headquarters for BC-ID is located at 3000 East Pine Avenue, Meridian, ID 83642. BC-ID does business in each county in Idaho.

78.     BC-ID also does business in New York. In particular, upon information and belief:

(a)     In 2021, BC-ID had 75 fully-insured members in New York, including 7 fully-insured members in the Southern District of New York.

(b)     In 2021, BC-ID collected premiums for its members in New York in the total amount of $399,957.44, including premiums in the total amount of $36,570.18 for members in the Southern District of New York.

(c)     In 2021, BC-ID had 356 fully-insured members who received services in New York

through the BlueCard program, including 162 fully-insured members who received

services through the BlueCard program in the Southern District of New York.

(d)     In 2021, BC-ID paid a total amount of $1,116,379.70 for its fully-insured members'

BlueCard claims for services from providers in New York, including a total amount

of $674,415.92 for claims for services from providers in the Southern District of

New York.

(e)     In 2021, BC-ID derived income in New York due to a partnership.

(f)     In 2021 and 2022, BC-ID has contracted with 4 durable medical equipment

suppliers in New York, including 3 in the Southern District of New York.

(g)     In 2021 and 2022, BC-ID contracted with a laboratory in New York.

(h)     In 2022, BC-ID has, as of October 6, 2022, 89 fully-insured members in New York,

including 16 fully-insured members in the Southern District of New York.

(i)     In 2022, BC-ID has, as of October 6, 2022, collected premiums for its members in

New York in the total amount of $394,667.59, including premiums in the total

amount of $67,260.09 for members in the Southern District of New York.

(j)     Funds transfers between Blue Plans, including BC-ID, for BlueCard claims are

processed by Bank of New York Mellon.

79.     **Defendant BS-ID** is the health insurance plan operating under the Blue Shield

trademark and trade name in Idaho. Like other Blue Cross and Blue Shield plans nationwide, BS-

ID is one of the largest health insurers, as measured by number of subscribers or enrollees within

its Service Area, which is defined as the state of Idaho. BS-ID likewise provides ASO services to

self-funded accounts throughout Idaho.

80.     The principal headquarters for BS-ID is located at 1602 21st Ave, Lewiston, ID

83501. BS-ID does business in each county in Idaho.

81.     **Defendant BCBS-IA** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Iowa. Like other Blue Cross and Blue Shield plans nationwide, BCBS-IA is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Iowa. BCBS-IA likewise provides ASO services to self-funded accounts throughout Iowa.

82.     The principal headquarters for BCBS-IA is located at 1331 Grand Avenue, Des Moines, IA 50306. BCBS-IA does business in each county in Iowa.

83.     **Defendant BCBS-IL** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Illinois. Like other Blue Cross and Blue Shield plans nationwide, BCBS-IL is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Illinois. BCBS-IL likewise provides ASO services to self-funded accounts throughout Illinois.

84.     The principal headquarters for BCBS-IL is located at 300 E. Randolph Street, Chicago, IL 60601. BCBS-IL does business in each county in Illinois.

85.     **Defendant BCBS-IN** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Indiana. Like other Blue Cross and Blue Shield plans nationwide, BCBS-IN is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Indiana. BCBS-IN likewise provides ASO services to self-funded accounts throughout Indiana.

86.     The principal headquarters for BCBS-IN is located at 120 Monument Circle, Indianapolis, IN 46204. BCBS-IN does business in each county in Indiana.

87.     **Defendant BCBS-KS** is the health insurance plan operating under the Blue Cross

and Blue Shield trademarks and trade names in Kansas. Like other Blue Cross and Blue Shield plans nationwide, BCBS-KS is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Kansas. BCBS-KS likewise provides ASO services to self-funded accounts throughout Kansas.

88.     The principal headquarters for BCBS-KS is located at 1133 SW Topeka Boulevard, Topeka, KS 66629. BCBS-KS does business in each county in Kansas.

89.     BCBS-KS also does business in New York. In particular, upon information and belief:

(a)     In 2021, BCBS-KS had 367 fully-insured members in New York, including 131 fully-insured members in the Southern District of New York.

(b)     In 2021, BCBS-KS collected premiums for its members in New York in the total amount of $988,113.43, including premiums in the total amount of $281,525.99 for members in the Southern District of New York.

(c)     In 2021, BCBS-KS had 1122 fully-insured members who received services in New York through the BlueCard program, including 537 fully-insured members who received services through the BlueCard program in the Southern District of New York.

(d)     In 2021, BCBS-KS paid a total amount of $2,101,739.04 for its fully-insured members' BlueCard claims for services from providers in New York, including a total amount of $1,551,022.83 for claims for services from providers in the Southern District of New York.

(e)     In 2022, BCBS-KS has, as of October 6, 2022, 420 fully-insured members in New York, including 141 fully-insured members in the Southern District of New York.

(f)     In 2022, BCBS-KS has, as of October 6, 2022, collected premiums for its members in New York in the total amount of $833,410.21, including premiums in the total amount of $203,088.55 for members in the Southern District of New York.

(g)     Fund transfers between Blue Plans, including BCBS-KS, for BlueCard claims are processed by Bank of New York Mellon.

90.     **Defendant BCBS-KY** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Kentucky. Like other Blue Cross and Blue Shield plans nationwide, BCBS-KY is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Kentucky. BCBS-KY likewise provides ASO services to self-funded accounts throughout Kentucky.

91.     The principal headquarters for BCBS-KY is located at 13550 Triton Park Blvd., Louisville, KY 40223. BCBS-KY does business in each county in Kentucky.

92.     **Defendant BCBS-LA** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Louisiana. Like other Blue Cross and Blue Shield plans nationwide, BCBS-LA is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Louisiana. BCBS-LA likewise provides ASO services to self-funded accounts throughout Louisiana.

93.     The principal headquarters for BCBS-LA is located at 5525 Reitz Avenue, Baton Rouge, LA 70809. BCBS-LA does business in each parish in Louisiana.

94.     **Defendant BCBS-ME** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Maine. Like other Blue Cross and Blue Shield plans nationwide, BCBS-ME is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Maine. BCBS-ME likewise

provides ASO services to self-funded accounts throughout Maine.

95.     The principal headquarters for BCBS-ME is located at 2 Gannett Drive, South Portland, ME 04016. BCBS-ME does business in each county in Maine.

96.     **Defendant BCBS-MD** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Maryland. Like other Blue Cross and Blue Shield plans nationwide, BCBS-MD is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Maryland. BCBS-MD likewise provides ASO services to self-funded accounts throughout Maryland.

97.     The principal headquarters for BCBS-MD is located at 10455 and 10453 Mill Run Circle, Owings Mill, MD 21117. BCBS-MD does business in each county in Maryland.

98.     **Defendant BCBS-MA** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Massachusetts. Like other Blue Cross and Blue Shield plans nationwide, BCBS-MA is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Massachusetts. BCBS-MA likewise provides ASO services to self-funded accounts throughout Massachusetts.

99.     The principal headquarters for BCBS-MA is located at 401 Park Drive, Boston, MA 02215. BCBS-MA does business in each county in Massachusetts.

100.    **Defendant BCBS-MI** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Michigan. Like other Blue Cross and Blue Shield plans nationwide, BCBS-MI is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Michigan. BCBS-MI likewise provides ASO services to self-funded accounts throughout Michigan.

101.    The principal headquarters for BCBS-MI is located at 600 E. Lafayette Blvd.,

Detroit, MI 48226. BCBS-MI does business in each county in Michigan.

102.    **Defendant BCBS-MN** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Minnesota. Like other Blue Cross and Blue Shield plans nationwide, BCBS-MN is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Minnesota. BCBS-MN likewise provides ASO services to self-funded accounts throughout Minnesota.

103.    The principal headquarters for BCBS-MN is located at 3535 Blue Cross Road, St. Paul, MN 55164. BCBS-MN does business in each county in Minnesota.

104.    **Defendant BCBS-MS** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Mississippi. Like other Blue Cross and Blue Shield plans nationwide, BCBS-MS is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Mississippi. BCBS-MS likewise provides ASO services to self-funded accounts throughout Mississippi.

105.    The principal headquarters for BCBS-MS is located at 3545 Lakeland Drive, Flowood, MS 39232. BCBS-MS does business in each county in Mississippi.

106.    **Defendant BCBS-MO** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Missouri, except for 32 counties in greater Kansas City and Northwest Missouri. Like other Blue Cross and Blue Shield plans nationwide, BCBS-MO is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Missouri, except the 32 counties in greater Kansas City and Northwest Missouri. BCBS-MO likewise provides ASO services to self-funded accounts throughout the same geographic region.

107.    The principal headquarters for BCBS-MO is located at 1831 Chestnut Street, St.

Louis, MO 63103. BCBS-MO does business in all but 32 counties in the state of Missouri.

108.     **<u>Defendant BCBS-KC</u>** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in the 32 counties of greater Kansas City and Northwest Missouri, plus Johnson and Wyandotte counties in Kansas. Like other Blue Cross and Blue Shield plans nationwide, BCBS-Kansas City is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the 32 counties of greater Kansas City and Northwest Missouri, plus Johnson and Wyandotte counties in Kansas. BCBS-KC likewise provides ASO services to self-funded accounts throughout the counties in which it operates.

109.     BCBS-KC also does business in New York. In particular, upon information and belief:

(a)     In 2021, BCBS-KC had 300 fully-insured members in New York, including 92 fully-insured members in the Southern District of New York.

(b)     In 2021, BCBS-KC collected premiums for its members in New York in the total amount of $5,542,314.21, including premiums in the total amount of $1,235,680.85 for members in the Southern District of New York.

(c)     In 2021, BCBS-KC had 1180 fully-insured members who received services in New York through the BlueCard program, including 518 fully-insured members who received services through the BlueCard program in the Southern District of New York.

(d)     In 2021, BCBS-KC paid a total amount of $2,157,988.72 for its fully-insured members' BlueCard claims for services from providers in New York, including a total amount of $1,361,595.58 for claims for services from providers in the

Southern District of New York.

(e)     In 2022, BCBS-KC has, as of October 5, 2022, 337 fully-insured members in New York, including 88 fully-insured members in the Southern District of New York.

(f)     In 2022, BCBS-KC has, as of October 5, 2022, collected premiums for its members in New York in the total amount of $3,517,300.91, including premiums in the total amount of $985,740.03 for members in the Southern District of New York.

(h)     Funds transfers between Blue Plans, including BCBS-KC, for BlueCard claims are processed by Bank of New York Mellon.

110.   The principal headquarters for BCBS-Kansas City is located at 2301 Main Street, One Pershing Square, Kansas City, MO 64108. BCBS-Kansas City does business in each county in the 32 counties of greater Kansas City and Northwest Missouri, plus Johnson and Wyandotte counties in Kansas.

111.   **Defendant BCBS-MT** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Montana. Like other Blue Cross and Blue Shield plans nationwide, BCBS-MT is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Montana. Defendant Health Care Service Corporation acquired Blue Cross and Blue Shield of Montana in 2012. Following the asset sale, the original Montana entity, which is now known as Caring for Montanans, Inc., no longer operated as a health insurer. However, Health Care Service Corporation has assumed liability for claims involving Blue Cross and Blue Shield of Montana in this MDL. BCBS-MT likewise provides ASO services to self-funded accounts throughout Montana.

112.   The principal headquarters for BCBS-MT is located at 560 N. Park Avenue, Helena, MT 59604-4309. BCBS-MT does business in each county in Montana.

113.     **Defendant BCBS-NE** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Nebraska. Like other Blue Cross and Blue Shield plans nationwide, BCBS-NE is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Nebraska. BCBS-NE likewise provides ASO services to self-funded accounts throughout Nebraska.

114.     The principal headquarters for BCBS-NE is located at 1919 Aksarban Drive, Omaha, NE 68180. BCBS-NE does business in each county in Nebraska.

115.     **Defendant BCBS-NV** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Nevada. Like other Blue Cross and Blue Shield plans nationwide, BCBS-NV is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Nevada. BCBS-NV likewise provides ASO services to self-funded accounts throughout Nevada.

116.     The principal headquarters for BCBS-NV is located at 9133 West Russell Rd. Suite 200, Las Vegas, NV 89148. BCBS-NV does business in each county in Nevada.

117.     **Defendant BCBS-NH** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in New Hampshire. Like other Blue Cross and Blue Shield plans nationwide, BCBS-NH is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of New Hampshire. BCBS-NH likewise provides ASO services to self-funded accounts throughout New Hampshire.

118.     The principal headquarters for BCBS-NH is located at 3000 Goffs Falls Rd, Manchester, NH 03103. BCBS-NH does business in each county in New Hampshire.

119.     **Defendant BCBS-NJ** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in New Jersey. Like other Blue Cross and Blue Shield

plans nationwide, BCBS-NJ is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of New Jersey. BCBS-NJ likewise provides ASO services to self-funded accounts throughout New Jersey.

120.    The principal headquarters for BCBS-NJ is located at Three Penn Plaza East, Newark, NJ 07105. BCBS-NJ does business in each county in New Jersey.

121.    **Defendant BCBS-NM** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in New Mexico. Like other Blue Cross and Blue Shield plans nationwide, BCBS-NM is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of New Mexico. BCBS-NM likewise provides ASO services to self-funded accounts throughout New Mexico.

122.    The principal headquarters for BCBS-NM is located at 5701 Balloon Fiesta Parkway Northeast, Albuquerque, NM 87113. BCBS-NM does business in each county in New Mexico.

123.    **Defendant BCBS-NC** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in North Carolina. Like other Blue Cross and Blue Shield plans nationwide, BCBS-NC is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of North Carolina. BCBS-NC likewise provides ASO services to self-funded accounts throughout North Carolina.

124.    The principal headquarters for BCBS-NC is located at 5901 Chapel Hill Road, Durham, NC 27707. BCBS-NC does business in each county in North Carolina.

125.    **Defendant BCBS-ND** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in North Dakota. Like other Blue Cross and Blue Shield plans nationwide, BCBS-ND is the largest health insurer, as measured by number of

subscribers or enrollees within its Service Area, which is defined as the state of North Dakota. BCBS-ND likewise provides ASO services to self-funded accounts throughout North Dakota.

126.    The principal headquarters for BCBS-ND is located at 4510 13th Avenue South, Fargo, ND 58121. BCBS-ND does business in each county in North Dakota

127.    BCBS-ND also does business in New York. In particular, upon information and belief:

(a)    In 2021, BCBS-ND had 32 fully-insured members in New York, including 16 fully-insured members in the Southern District of New York.

(b)    In 2021, BCBS-ND collected premiums for its members in New York in the total amount of $320,222.85, including premiums in the total amount of $71,915.85 for members in the Southern District of New York.

(c)    In 2021, BCBS-ND had 207 fully-insured members who received services in New York through the BlueCard program, including 104 fully-insured members who received services through the BlueCard program in the Southern District of New York.

(d)    In 2021, BCBS-ND paid a total amount of $379,113.18 for its fully-insured members' BlueCard claims for services from providers in New York, including a total amount of $249,602.89 for claims for services from providers in the Southern District of New York.

(e)    In 2022, BCBS-ND has, as of October 6, 2022, 38 fully-insured members in New York, including 12 fully-insured members in the Southern District of New York.

(f)    In 2022, BCBS-ND has, as of October 6, 2022, collected premiums for its members in New York in the total amount of $250,623.66, including premiums in the total

amount of $88,489.16 for members in the Southern District of New York.

(g)     Funds transfers between Blue Plans, including BCBS-ND, for BlueCard claims are processed by Bank of New York Mellon.

128.    **Defendant BCBS-OH** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Ohio. Like other Blue Cross and Blue Shield plans nationwide, BCBS-OH is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Ohio. BCBS-OH likewise provides ASO services to self-funded accounts throughout Ohio.

129.    The principal headquarters for BCBS-OH is located at 120 Monument Circle, Indianapolis, IN 46203. BCBS-OH does business in each county in Ohio.

130.    **Defendant BCBS-OK** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Oklahoma. Like other Blue Cross and Blue Shield plans nationwide, BCBS-OK is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Oklahoma. BCBS-OK likewise provides ASO services to self-funded accounts throughout Oklahoma.

131.    The principal headquarters for BCBS-OK is located at 1400 South Boston, Tulsa, OK 74119. BCBS-OK does business in each county in Oklahoma.

132.    **Defendant BCBS-OR** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Oregon. Like other Blue Cross and Blue Shield plans nationwide, BCBS-OR is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Oregon. BCBS-OR likewise provides ASO services to self-funded accounts throughout Oregon.

133.    The principal headquarters for BCBS-OR is located at 100 SW Market Street,

Portland, OR 97207. BCBS-OR does business in each county in Oregon.

134.     **Defendant Highmark BCBS** is the health insurance plan operating under the Blue
Cross and Blue Shield trademarks and trade names in Western Pennsylvania and the Blue Shield
trademarks and trade names throughout the entire state of Pennsylvania. Like other Blue Cross and
Blue Shield plans nationwide, Highmark BCBS is the largest health insurer, as measured by
number of subscribers or enrollees within its Service Area, which is defined as the 29 counties of
Western Pennsylvania: Allegheny, Armstrong, Beaver, Bedford, Blair, Butler, Cambria, Cameron,
Centre (Western portion), Clarion, Clearfield, Crawford, Elk, Erie, Fayette, Forest, Green,
Huntingdon, Indiana, Jefferson, Lawrence, McKean, Mercer, Potter, Somerset, Venango, Warren,
Washington, and Westmoreland Counties. Highmark BCBS likewise provides ASO services to
self-funded accounts throughout its Service Area. (As described below, Highmark BCBS has
entered into illegal and anticompetitive agreements with at least two of the other Individual Blue
Plans in Pennsylvania, which prevent Highmark BCBS from competing under its Blue Shield
trademark in Northeastern and Southeastern Pennsylvania).

135.     The principal headquarters for Highmark BCBS is located at 120 Fifth Avenue
Place, Pittsburgh, PA 15222. Highmark BCBS does business in each county in Western
Pennsylvania.

136.     **Defendant BC-Northeastern PA** is the health insurance plan operating under the
Blue Cross trademark and trade name in Northeastern Pennsylvania. During the pendency of this
litigation BC-Northeastern PA has been acquired by Highmark, Inc. BC-Northeastern PA is one
of the largest health insurers, as measured by number of subscribers or enrollees within its Service
Area, which is defined as the 13 counties that make up Northeastern Pennsylvania: Bradford,
Carbon, Clinton, Lackawanna, Luzerne, Lycoming, Monroe, Pike, Sullivan, Susquehanna, Tioga,

36

Wayne, and Wyoming Counties. BC-Northeastern PA likewise provides ASO services to self-funded accounts throughout its Service Area.

137.   The principal headquarters for BC-Northeastern PA is located at 19 North Main Street, Wilkes-Barre, PA. 18711. BC-Northeastern PA does business in each county in Northeastern Pennsylvania.

138.   **Defendant Capital BC** is the health insurance plan operating under the Blue Cross trademark and trade name in central Pennsylvania. Like other Blue Cross and Blue Shield plans nationwide, Capital BC is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the 21 counties that make up central Pennsylvania: Adams, Berks, Centre (Eastern portion), Columbia, Cumberland, Dauphin, Franklin, Fulton, Juniata, Lancaster, Lebanon, Lehigh, Mifflin, Montour, Northampton, Northumberland, Perry, Schuylkill, Snyder, Union, and York Counties. Capital BC likewise provides ASO services to self-funded accounts throughout its Service Area.

139.   The principal headquarters for Capital BC is located at 2500 Elmerton Avenue, Harrisburg, PA 17177. Capital BC does business in 21 counties in central Pennsylvania.

140.   **Defendant Independence BC** is the health insurance plan operating under the Blue Cross trademark and trade name in Southeastern Pennsylvania. Like other Blue Cross and Blue Shield plans nationwide, Independence BC is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the five counties that make up Southeastern Pennsylvania: Bucks, Chester, Delaware, Montgomery, and Philadelphia Counties. Independence-BC likewise provides ASO services to self-funded accounts throughout its Service Area.

141.   The principal headquarters for Independence BC is located at 1901 Market Street,

Philadelphia, PA 19103. Independence BC does business in each county in Southeastern Pennsylvania.

142.    Highmark BCBS, BC-Northeastern PA, Capital BC, and Independence BC currently exercise market power in the commercial health insurance market in their respective services areas of Pennsylvania, including Highmark BCBS throughout Western Pennsylvania. Since 2000, between 60% and 80% of the Western Pennsylvania residents who subscribe to full-service commercial health insurance (whether through group plans or through individual policies) are subscribers of Highmark. Highmark Executive Vice President John Paul has stated publicly that Highmark is "an insurer that clearly dominates the commercial market" and "it's pretty obvious [Highmark] control[s] finance of health care in western Pennsylvania." As of 2006, at least 60 percent of the Northeastern Pennsylvania residents who subscribe to full-service commercial health insurance (whether through group plans or through individual policies) are subscribers of BC-Northeastern PA, at least and at least 62 percent of the Southeastern Pennsylvania residents who subscribe to full-service commercial health insurance (whether through group plans or through individual policies) are subscribers of Independence BC.

143.    As the dominant insurers in Pennsylvania, Highmark BCBS, BC-Northeastern PA, Capital BC, and Independence BC have led the way in causing supra-competitive prices. From 2002-2006, health insurance premiums for single individuals in the Pittsburgh area rose approximately 55% and health insurance premiums for Pittsburgh families rose approximately 51%. In 2008, Highmark raised its rates for its CompleteCare program by 15%. In 2012, Highmark filed for premium rate increases of 9.8% for its small group plans. As a result of these and other inflated premiums, net income increased from less than $50 million in 2001 to approximately $444.7 million in 2011. By the end of 2005, Highmark's surplus (i.e., assets in excess of legally

required reserves to pay claims) exceeded \$2.8 billion; by 2011, it exceeded \$4.1 billion. In 2012, Highmark paid its CEOs more than \$6 million and paid its Board of Directors \$1.9 million.

144. **Defendant BCBS-Puerto Rico** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Puerto Rico. Like other Blue Cross and Blue Shield plans nationwide, BCBC-Puerto Rico is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the territory of Puerto Rico. BCBS-Puerto Rico likewise provides ASO services to self-funded accounts throughout Puerto Rico.

145. The principal headquarters for BCBS-Puerto Rico is located at 1441 F.D. Roosevelt Avenue, San Juan, Puerto Rico 00920. BCBS-Puerto Rico does business throughout Puerto Rico.

146. **Defendant BCBS-RI** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Rhode Island. Like other Blue Cross and Blue Shield plans nationwide, BCBS-RI is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Rhode Island. BCBS-RI likewise provides ASO services to self-funded accounts throughout Rhode Island.

147. The principal headquarters for BCBS-RI is located at 500 Exchange Street, Providence, RI 02903. BCBS-RI does business in each county in Rhode Island.

148. **Defendant BCBS-SC** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in South Carolina. Like other Blue Cross and Blue Shield plans nationwide, BCBS-SC is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of South Carolina. BCBS-SC likewise provides ASO services to self-funded accounts throughout South Carolina

149. The principal headquarters for BCBS-SC is located at 2501 Faraway Drive,

Columbia, SC 29212. BCBS-SC does business in each county in South Carolina.

150. **<u>Defendant BCBS-SD</u>** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in South Dakota. Like other Blue Cross and Blue Shield plans nationwide, BCBS-SD is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of South Dakota. BCBS-SD likewise provides ASO services to self-funded accounts throughout South Dakota.

151. The principal headquarters for BCBS-SD is located at 1601 W. Madison, Sioux Falls, SD 57104. BCBS-SD does business in each county in South Dakota.

152. **<u>Defendant BCBS-TN</u>** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Tennessee. Like other Blue Cross and Blue Shield plans nationwide, BCBS-TN is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Tennessee. BCBS-TN likewise provides ASO services to self-funded accounts throughout Tennessee.

153. The principal headquarters for BCBS-TN is located at 1 Cameron Hill Circle, Chattanooga, TN 37402. BCBS-TN does business in each county in Tennessee.

154. **<u>Defendant BCBS-TX</u>** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Texas. Like other Blue Cross and Blue Shield plans nationwide, BCBS-TX is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Texas. BCBS-TX likewise provides ASO services to self-funded accounts throughout Texas.

155. The principal headquarters for BCBS-TX is located at 1001 E. Lookout Drive, Richardson, TX 75082. BCBS-TX does business in each county in Texas.

156. **<u>Defendant BCBS-UT</u>** is the health insurance plan operating under the Blue Cross

and Blue Shield trademarks and trade names in Utah. Like other Blue Cross and Blue Shield plans nationwide, BCBS-UT is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Utah. BCBS-UT likewise provides ASO services to self-funded accounts throughout Utah.

157.    The principal headquarters for BCBS-UT is located at 2890 East Cottonwood Parkway, Salt Lake City, UT 84121. BCBS-UT does business in each county in Utah.

158.    **Defendant BCBS-VT** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Vermont. Like other Blue Cross and Blue Shield plans nationwide, BCBS-VT is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Vermont. BCBS-VT likewise provides ASO services to self-funded accounts throughout Vermont.

159.    The principal headquarters for BCBS-VT is located at 445 Industrial Lane, Berlin, VT 05602. BCBS-VT does business in each county in Vermont.

160.    **Defendant BCBS-VA** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in most of Virginia, with the exception of a small portion of Northern Virginia in the Washington, DC suburbs. Like other Blue Cross and Blue Shield plans nationwide, BCBS-VA is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Virginia, excepting a small portion of Northern Virginia in the Washington, DC suburbs. BCBS-VA likewise provides ASO services to self-funded accounts throughout its Service Area.

161.    The principal headquarters for BCBS-VA is located at 2235 Staples Mill Road, Suite 401, Richmond, VA 23230. BCBS-VA does business in each county in Virginia

162.    **Defendant BC-WA** is the health insurance plan operating under the Blue Cross

trademarks and trade names in Washington. Like other Blue Cross and Blue Shield plans nationwide, BC-WA is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Washington. BC-WA likewise provides ASO services to self-funded accounts throughout Washington.

163.    The principal headquarters for BC-WA is located at 7001 220th Street SW, Mountlake Terrace, WA 98043-4000. BC-WA does business in each county in Washington.

164.    **Defendant BS-WA** is the health insurance plan operating under the Blue Shield trademarks and trade names in Washington. Like other Blue Cross and Blue Shield plans nationwide, BS-WA is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Washington. BS-WA likewise provides ASO services to self-funded accounts throughout Washington.

165.    The principal headquarters for BS-WA is located at 1800 Ninth Avenue, Seattle, WA 98111. BS-WA does business in each county in Washington.

166.    **Defendant BCBS-DC** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Washington, DC and its suburbs. Like other Blue Cross and Blue Shield plans nationwide, BCBS-DC is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as Washington, DC and a small portion of Northern Virginia in the Washington, DC suburbs. BCBS-DC likewise provides ASO services to self-funded accounts throughout its Service Area.

167.    The principal headquarters for BCBS-DC is located at 10455 Mill Run Circle, Owings Mill, MD 21117. BCBS-DC does business throughout Washington, DC

168.    **Defendant BCBS-WV** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in West Virginia. Like other Blue Cross and Blue

Shield plans nationwide, BCBS-WV is the largest health insurer, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of West Virginia. BCBS-WV likewise provides ASO services to self-funded accounts throughout West Virginia.

169.    The principal headquarters for BCBS-WV is located at 700 Market Square, Parkersburg, West Virginia 26101. BCBS-WV does business in each county in West Virginia

170.    **Defendant BCBS-WI** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Wisconsin. Like other Blue Cross and Blue Shield plans nationwide, BCBS-WI is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Wisconsin. BCBS-WI likewise provides ASO services to self-funded accounts throughout Wisconsin.

171.    The principal headquarters for BCBS-WI is located at 120 Monument Circle, Indianapolis, IN 46204. BCBS-WI does business in each county in Wisconsin.

172.    **Defendant BCBS-WY** is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Wyoming. Like other Blue Cross and Blue Shield plans nationwide, BCBS-WY is one of the largest health insurers, as measured by number of subscribers or enrollees within its Service Area, which is defined as the state of Wyoming. BCBS-WY likewise provides ASO services to self-funded accounts throughout Wyoming.

173.    The principal headquarters for BCBS-WY is located at P.O. Box 2266, Cheyenne, WY 82003. BCBS-WY does business in each county in Wyoming.

174.    BCBS-WY also does business in New York. In particular, upon information and belief:

    (a)    In 2021 and 2022, BCBS-WY has paid a monthly covered lives assessment surcharge to New York state for covered individuals residing in New York.

(b)     BCBS-WY derived income from a partnership having an employee working in New York.

(c)     In 2021, BCBS-WY had 18 fully-insured members in New York, including 7 fully-insured members in the Southern District of New York.

(d)     In 2021, BCBS-WY collected premiums for its members in New York in the total amount of $142,467.60, including premiums in the total amount of $86,414.01 for members in the Southern District of New York.

(e)     In 2021, BCBS-WY had 419 fully-insured members who received services in New York through the BlueCard program, including 197 fully-insured members who received services through the BlueCard program in the Southern District of New York.

(f)     In 2021, BCBS-WY paid a total amount of $1,780,608.47 for its fully-insured members' BlueCard claims for services from providers in New York, including a total amount of $985,191.42 for claims for services from providers in the Southern District of New York.

(g)     In 2022, BCBS-WY has, as of October 7, 2022, 19 fully-insured members in New York, including 10 fully-insured members in the Southern District of New York.

(h)     In 2022, BCBS-WY has, as of October 7, 2022, collected premiums for its members in New York in the total amount of $96,834.06, including premiums in the total amount of $61,590.21 for members in the Southern District of New York.

(i)     Funds transfers between Blue Plans, including BCBS-WY, for BlueCard claims are processed by Bank of New York Mellon.

IV.    **ALLEGATIONS**

A.    **Background on the Blue Plans and BCBSA**

175.    Upon information and belief, the Blue Cross and Blue Shield plans developed independently as non-profit organizations that used the Blue Cross and Blue Shield brand and trademarks to create a national brand that would operate locally within particular geographic areas. Over time, the Blue Plans have increasingly operated as for-profit entities.

176.    BCBSA was created by the Blue Plans and is wholly controlled by the Blue Plans.

177.    Upon information and belief, the imposition of geographic restrictions in trademark licenses was an effort by BCBSA to deter competition between the individual Blue Plans within service areas and, today, within ESAs.

178.    Historically and generally, Blue Cross plans provided medical coverage for covered costs incurred by enrollees at hospital visits and Blue Shield plans provided medical coverage for covered costs incurred by enrollees when visiting physicians and other medical providers on an out-patient basis.

179.    Upon information and belief, the Blue Plans did compete for business within one another's geographic territories, both in the form of Blue Cross plan versus Blue Shield plan competition, as well as so-called Blue Cross-on-Blue Cross competition and Blue Shield-on-Blue Shield competition within singular geographic markets.

180.    In an effort to coordinate national cooperation among the Blue Plans, the Plans agreed to centralize ownership of their trademarks and brand names in precursor organizations to BCBSA. This was done at a time when the various Blue Plans were actual or potential competitors within geographic markets nationwide.

181.    In 1954, the Blue Cross plans transferred their rights in each of their respective

trademarks and brand names to the American Hospital Association ("AHA"). In 1972, the AHA assigned its rights to these trademarks and brand names to the Blue Cross Association. Similarly, in 1952, the respective Blue Shield plans agreed to transfer the ownership rights in their trademarks and brand names to the National Association of Blue Shield Plans, which was renamed to the Blue Shield Association in 1976.

182.     In the 1970s, individual Blue Cross and Blue Shield plans across the United States began merging and the executive committees of the Blue Cross Association and the National Association of Blue Shield Plans met together several times a year. Furthering their national consolidation, the Blue Cross Association and the National Association of Blue Shield Plans (by this time, the Blue Shield Association), consolidated their staff members but retained separate boards of directors.

183.     In 1982, the Blue Cross Association and the Blue Shield Association formally merged and formed what is now the BCBSA. At that time, the BCBSA became the sole owner of the individual Blue Cross and Blue Shield trademarks and brand names that were previously owned by the individual Blue Plans.

184.     In November 1982, BCBSA's member Blue Plans agreed to two resolutions that further consolidated the footprint of the Blue Plans. The effect of these resolutions was to (1) consolidate all Blue Cross and Blue Shield plans at the local level to form singular Blue Cross and Blue Shield plans, and (2) further consolidate all Blue Plans within a state in an effort to ensure that each state would have only a single Blue Plan. Upon information and belief, the effect of these resolutions was to create a staggering reduction in the number of Blue Plans nationwide from 110 in 1984 to 75 by 1989, and down to around 36 Blue Plans nationwide in today's commercial health insurance products market.

185.    In 1992, BCBSA removed a requirement that Blue Plan licensees operate as non-for-profit entities, and as a result, many Blue Plans converted to a for-profit status.

186.    Defendant Anthem, Inc., doing business in the Southern District of New York as Empire Blue Cross Blue Shield, grew markedly and is by some measures now the largest health insurance company in the United States.

187.    Several of the Blue Plans now generate substantial earnings and surpluses on a for-profit basis and provide senior management with annual compensation in the multi-million dollar range. According to Reuters, Anthem Inc. provided its Chief Executive Officer, Gail Boudreaux, with total compensation that exceeded $15 million in 2019.[2]

188.    Upon information and belief, BCBSA held an "Assembly of Plans" in 1987 for the purpose of deciding how individual Blue Plans would and would not compete against one another. During the Assembly of Plans, the Blue Plans agreed to the establishment of ESAs, resulting in the elimination of competition between Blue Plans within designated geographic territories.

189.    Following the 1987 Assembly of Plans, the number of *non-Blue branded* subsidiaries of individual Blue Plans increased markedly. These non-Blue branded subsidiaries continued to compete with Blue Plans within designated ESAs.

190.    Upon information and belief, BCBSA responded to the proliferation of non-Blue branded competition within ESAs in 1996 by including what is referred to as a local "best efforts" requirement within the Blue Plans' trademark and brand name licensing agreements. This rule required that Blue Plans derive 80% of their revenue from health plans and related services within an ESA to come from products sold, marketed, administered or underwritten under their requisite,

---

[2] *BRIEF-Anthem CEO Gail Boudreaux's 2019 Total Compensation Was $15.5 Mln vs $14.2 Mln In 2018 - SEC Filing*, Reuters, https://www.reuters.com/article/brief-anthem-ceo-gail-boudreauxs-2019-to/brief-anthem-ceo-gail-boudreauxs-2019-total-compensation-was-15-5-mln-vs-14-2-mln-in-2018-sec-filing-idUSFWN2BK1LQ (last visited Dec. 1, 2022).

licensed Blue-branded names.

191. In 1996, BCBSA also set forth a steep exit fee for any Blue Plan disassociating from BCBSA and placed limitations upon transfer` rights for licensed Blue trademarks and brand names, requiring the prior review and facilitation of a successor licensee by BCBSA.

192. In 2005 BCBSA doubled down and voted to impose a national "best efforts" requirement upon the Blue Plans, mandating that that two-thirds of revenue from health care plans and related services must be sold, marketed, administered or underwritten under their requisite, licensed Blue-branded names. At this time, BCBSA also created rules related to "ceding" national accounts (Blue customers with employees and/or retirees in more than one state) from one Blue Plan to another when a national account is headquartered within a particular Blue Plan's ESA.

193. The effect of each and every one of these restrictions was to immensely curtail the ability of the Blue Plans to compete with one another.

**B.      Control of BCBSA by the Blue Plans**

194. The individual Blue Plans are the members of, and govern, BCBSA.

195. BCBSA is entirely controlled by the Blue Plans – individual commercial health insurance product companies that are licensees of the Blue trademarks and brand names who, but for any agreement otherwise, could and would compete with one another.

196. The Blue Plans are BCBSA's customers, its member licensees and also comprise its governing board.

197. At least one federal court has recognized that BCBSA is in effect nothing more than a national conglomeration of the individual Blue Plans, noting that BCBSA is "owned and controlled by the member plans" and that "by majority vote, the plans could dissolve the Association and return ownership of the Blue Cross and Blue Shield names to the individual

48

plans." *See Central Benefits Mut. Ins. Co. v. Blue Cross and Blue Shield Ass'n*, 711 F. Supp. 1423, 1424-5 (S.D. Ohio 1989).

198.     The Blue Plans – as licensees of specific Blue trademarks and brand names – control the Board of Directors of BCBSA.

199.     The current chair of the BCBSA Board of Directors is Alphonso O'Neil-White, who is also the current President and Chief Executive Officer of BlueCross BlueShield of Western New York. The chief executive officer of each of the Blue Plans serves on the Board of Directors of BCBSA. The BCBSA Board of Directors typically meets at least quarterly.

200.     In a report from the U.S. Government Accountability Office, the internal voting process at BCBSA was outlined:

> Decisions on significant issues relevant to all plans are generally decided by a vote of the Association membership. Examples of significant issues include the termination of a plan's membership license or the amendment of the Association's bylaws. The membership voting process combines a straight vote-one member, one vote, and a weighted vote. Under weighted voting, each member plan is entitled to one vote for each $1,000 of annual dues it pays to the Association. Because dues are based on plan premium volume, the larger plans receive a greater number of weighted votes than smaller plans.

> For a membership vote to pass, the bylaws generally require a majority of both the straight and weighted votes of the members. However, this rule has exceptions. For example, the termination of a plan's trademark license requires at least three-fourths of the straight vote and three-fourths of the weighted vote rather than a simple majority. An amendment to the Association bylaws, on the other hand, requires one-half of the straight vote and two-thirds of the weighted vote.[3]

**C.      The License Agreements and Resulting Competitive Restraints**

201.     As discussed above, BCBSA requires Blue Plans to enter a license agreement regarding the use of Blue trademarks and brand names.

---

[3] Government Accountability Office, "Blue Cross and Blue Shield: Experiences of Weak Plans Underscore theRole of Effective State Oversight," Apr. 1994 ("GAO Report"), at 25-26, *available at* http://archive.gao.gov/t2pbat3/151562.pdf. (last visited Dec. 1, 2022).

202.    The Government Accountability Office has further recognized that:

To use the Blue Cross and Blue Shield names and trademarks, each Blues plan must sign a license agreement with the Association. The agreement does not constitute a partnership or joint venture, and the Association has no obligations for the debts of member plans.

The license agreement restricts plans from using the trademark outside their prescribed service area to prevent competition among plans using the Blue Cross and Blue Shield names and trademarks.[4]

This "prescribed service area" is the aforementioned ESA.

203.    The GAO Report also recognizes that BCBSA maintains a series of internal committees that oversee activity by the Blue Plans with regard to varied rules and restrictions: "[f]or example, the Association's Licensure and FinancialServices Division monitors Blues plans' compliance with the membership standards and reports directly to the board's Plan Performance and Financial Standards Committee, which makes recommendations to the board on plan licensure decisions."[5]

204.    The individual Blue Plans– who are themselves licensees – control the entry of new members into BCBSA. Upon information and belief, for a proposed new entrant to be approved for a licensure to use the Blue trademarks and/or brand names, that entrant must receive a majority vote from the BCBSA Board of Directors.

205.    Inherent in the structure of BCBSA, the individual Blue Plans control the rules and regulations that all Blue Plan members of BCBSA must abide by. Upon information and belief, pertinent rules and regulations include the Blue Cross License Agreement and the Blue Shield License Agreement (collectively, the "License Agreements"), the Membership Standards Applicable to Regular Members (the "Membership Standards"), and the Guidelines to Administer

---

[4] *Id*. at 28.
[5] *Id*. at 25.

Membership Standards (the "Guidelines").

206.    Upon information and belief, the License Agreements state that they can be amended only by the affirmative vote of three-fourths of the Blue Plan members and three-fourths of the current weighted vote of all of the Blue Plans. The License Agreements further mandate that a Blue Plan agrees to comply with the Membership Standards.

207.    Upon information and belief, the Guidelines state that the Membership Standards and the Guidelines were developed by an internal committee of BCBSA in 1994 and that revisions to the Membership Standards likewise may only be made by a three-fourths plan vote and a three-fourths weighted plan vote.

208.    Upon information and belief, the individual Blue Plans monitor the adherence of Blue Plan members of BCBSA with the rules and regulations of BCBSA.

209.    Upon information and belief, the Guidelines make clear that an internal committee of BCBSA is charged with determining whether an individual Blue Plan is in compliance with the Licensing Agreements and the Membership Standards, with that committee's determinations resulting in recommendations for any corrective action to the Board of Directors.

210.    The individual Blue Plans control and administer the disciplinary process for the Blue Plan members of BCBSA that do not adhere to the BCBSA's rules and regulations. Upon information and belief, the Guidelines characterize three potential responses to an individual Blue Plan's failure comply with BCBSA rules and regulations, including immediate termination, mediation and arbitration, and sanctions. Any of these responses could result in the revocation of an individual Blue Plan's license.

211.    The individual Blue Plans control the termination of existing BCBSA members. Upon information and belief, the Guidelines prescribe that removal of a Blue Plan's license(s) and

membership in BCBSA may only be terminated by a three-fourths plan vote and a three-fourths weighted vote.

### D.        The Horizontal Agreements

212.    The individual Blue Plans are potential competitors that use their aforementioned control of BCBSA to illegally coordinate their activities. Resultantly, the rules and regulations promulgated by BCBSA on the Blue Plans are in fact imposed by the Blue Plans upon themselves.

213.    Each and every BCBSA licensee is an independent legal organization.

214.    The individual Blue Plans include many of the largest commercial health insurance products companies in the United States today.

215.    As stated, Defendant Anthem Inc., by some measures, is the largest commercial health insurance product company in the United States. In a similar vein, a full fifteen of the twenty-five largest commercial health insurance product companies nationwide are BCBSA licensees. But for the restrictions that the Blue Plans have decided to impose upon themselves – as discussed in further detail below – the Blue Plans would compete against one another in the national market for commercial health insurance products.

216.    As previously discussed, BCBSA is a nationwide organization used by the individual Blue Plans to enter into agreements that result in Competitive Restraints.

217.    Because BCSBA is owned and controlled by its member-Blue Plans, any agreement between BCBSA and one of its member-Blue Plans constitutes a horizontal agreement between and among the individual Blue Plans themselves.

218.    Upon information and belief, agreements to divvy the United States into geographic ESAs occurred, even though various Blue Plans have antitrust policies in place that flatly disallow the activity in which BCBSA and the Blue Plans are engaged.

219.    Upon information and belief, Defendants share sensitive information with each other and did so on several occasions within the Relevant Period.

**E.        Horizontal Agreements Not to Compete**

220.    Each Defendant named herein is an independent legal entity.

221.    No Defendant has or had any franchise agreement with another Blue Plan during the Relevant Period.

222.    No Defendant has or had any franchise agreement with BCBSA during the Relevant Period.

223.    The many rules and regulations of BCBSA, including but not limited to the License Agreements, the Membership Standards, and the Guidelines, constitute horizontal agreements between competitors, the individual Blue Plans (which are licensees of the Blue trademarks and brand names), to divide the United States geographic market for commercial health insurance products. This is a *per se* violation of Sections 1 and 3 of the Sherman Act.

224.    Defendants have divided the United States geographic market for commercial health insurance products into ESAs, which are in turn allocated to individual Blue Plans.

225.    By virtue of the License Agreements, Guidelines and Membership Standards, which the individual Blue Plans (as licensees of the Blue trademarks and brand names) created, control and enforce, each Blue Cross and Blue Shield licensee agrees that neither it nor its subsidiaries will compete under the licensed Blue Cross or Blue Shield trademarks or brand names outside of a designated ESA.

226.    Upon information and belief, the License Agreement defines each Blue Plan's ESA as the geographical area or areas served by the particular Blue Plan as of June 10, 1972, and/or those to which the Blue Plan has been approved for a subsequent license.

227.    Each and every Blue Plan Defendant entered into a License Agreement with BCBSA.

228.    All Defendants enforced ESAs as provided by the License Agreement from at least 2008 through present.

229.    In addition to geographic restrictions regarding the Blue Plan's use of the Blue trademarks and brand names, Defendants have also agreed to limit their competition when they or their subsidiaries are not using the Blue trademarks or brand names. The Guidelines and Membership Standards, which the Blue Plans created, control and enforce (and with which each Blue Plan must comply as a result of the License Agreements) place two major restrictions upon non-Blue branded competition, as discussed above: (1) each Blue Plan agrees that at least 80 percent of the annual revenue that is derived from products within its designated ESA (with the exception of Medicare and Medicaid products) must be derived from those products offered under their licensed Blue trademarks and brand names, and (2) each Blue Plan agrees that at least two-thirds of the annual revenue generated by it or its subsidiaries – whether inside *or* outside its ESA (with the exception of Medicare and Medicaid products) – shall be derived from products offered under the Blue trademarks and brand names.

230.    Taken together, these "best efforts" restrictions curtail the ability of Blue Plans to generate revenue from non-Blue branded business, thereby limiting the ability and encouragement of Blue Plans to develop non-Blue brands that could and would compete with Blue brands.

231.    The one-third cap on non-Blue branded revenue further detracts from a Blue Plan's incentive, if there is any whatsoever, to compete outside of its ESA. To attempt to do so, a Blue Plan would then need to buy, rent or build out a provider network under a non-Blue brand, while also ensuring that its revenue derived from the effort did not exceed the agreed upon one-third cap.

If a Blue plan offered non-Blue branded products in its own ESA, this would in turn reduce the amount of non-Blue revenue it would be allowed to earn from outside its ESA. This creates a massive disincentive toward the development of potential or actual competition.

232.    The aforementioned restrictions on the ability of the Blue Plans to derive revenue from activity outside of their ESAs constitute agreements between competitors to divide and allocate geographic markets and as a result, are *per se* violations of Sections 1 and 3 of the Sherman Act.

233.    Upon information and belief, each and every Defendant complied with the aforementioned restrictions on the ability of any individual Blue Plan to derive revenue from outside of their designated ESA from 2008 to present.

234.    Upon information and belief, BCBSA and the Blue Plans have endeavored to keep the ESA restrictions as secret as possible.

235.    The Blue Plans have agreed to impose the aforementioned sharp penalties on Blue Plans that violate the territorial restrictions of the ESAs, in the form of, *inter alia*, license termination penalties and the imposition of exit fees.

236.    The penalties are severe because the revocation of a Blue Plan's license would result in the Blue Plan losing the brand name through which it derived the vast majority of its revenue. Also, the high exit fees imposed upon a company losing its Blue license would go toward the establishment of a new Blue licensee in that company's ESA – essentially placing a former Blue licensee in a position where it pays to develop competition that would then have the advantage of using their previously licensed trademarks and brand name. In effect, breaching the territorial restrictions of the ESAs threatens to put an existing Blue Plan licensee entirely out of business.

237.    During the Relevant Period, no Defendant competed under the licensed Blue Cross

and Blue Shield trademarks and/or trade names outside of its ESA.

238.    But for the aforementioned territorial restrictions, the copious Blue Plans and their subsidiary non-Blue branded business lines could and would effectively compete in each other's ESAs. Presently, almost none compete outside of their designated ESAs under non-Blue trademarks and brand names, despite their "ability" to do so.

239.    Even in circumstances where Blue Plans have offered non-Blue branded products outside of their ESAs, they have been hamstrung in doing so by the "best efforts" restrictions discussed above. Upon information in belief, this has resulted in declining or stagnant growth of non-Blue branded business conducted outside of a Blue Plan's ESA in situations where the market would likely otherwise dictate an increase in revenue.

240.    The territorial restrictions inherent in the ESAs agreed upon by all BCBSA members create a Competitive Restraint to competition by preventing member-Blue Plans from competing with one another and with non-Blue plans offered by Blue Plans' subsidiaries. These Competitive Restraints apply no matter how economically favorable it may be for a Blue Plan to enter a new service area, and no matter how much costs to self-funded accounts such as Plaintiffs would be reduced if such competition were not restrained.

### F.    Anticompetitive Acquisition Restrictions

241.    In addition to the *per se* illegal geographic restrictions discussed above, BCBSA rules and regulations (which the individual Blue Plans created, control and agree to abide by) also illegally restrict the ability of non-members of BCBSA to acquire or otherwise obtain control of a Blue Plan in the following ways:

•    a prohibition upon the acquisition of a Blue Plan by a non-Blue entity without the approval of BCBSA; and

• provisions within the License Agreements that restrict acquisitions for for-profit Blue Plan licensees, including the termination of a license automatically if (a) any institutional investor becomes beneficially entitled to ten percent or more of the voting power of a Blue Plan; (b) if any non-institutional investor becomes beneficially entitled to five percent or more of the voting power of a Blue Plan; (c) if any person becomes beneficially entitled to twenty percent or more of a Blue Plan's outstanding common stock or equity securities, or (d) if a Blue Plan conveys, assigns, transfers or sells substantially all of its assets to any person or consolidates/merges with or into a person, the result of which does not comply with the provisions of (a), (b) and (c).

242.    These acquisition restraints restrict competition in violation of the Sherman Act because they markedly reduce the ability of non-BCBSA member companies to expand their business and thereby compete against the individual Blue Plans. The acquisition restrictions effectively force competitors to build their own, new networks in a service area in cases where it may often be the case that acquiring all or part of a Blue Plan may be the most effective way to enter a geographic market.

243.    Since the acquisition restrictions were approved by BCBSA in 1996, the only acquisitions of Blue Plans have been made by other Blue Plans. During this time, there has also been a consolidation of Blue Plans nationwide – down from 62 Blue licensees in 1996 to around 36 today.

244.    The acquisition restrictions are an agreement by the Blue Plans to force high costs upon competitors for the ability to expand their networks, reduce market efficiencies and to insulate themselves from further competition. The restrictions result in less competition and in higher ASO Fees for self-funded accounts.

G.       **The Licensing Agreements Have Deterred Nationwide Competition**

245.     The Blue Plans – as licensees, members and parts of the governing body of BCBSA – have conspired with one another to create, approve, comply with and enforce the many rules and regulations of BCBSA, including the *per se* illegal ESAs in the License Agreements and Guidelines.

246.     Without the *per se* illegal ESAs in place, many of the individual Blue Plans would be clear competitors of one another within their respective ESAs. If the Blue Plans were able to compete with one another, the result would be lower ASO Fees paid by self-funded accounts, such as Plaintiffs.

H.       **Supra-competitive ASO Fees Charged by the Blue Plans and the Resulting Deprivation of Choice and Access to Innovative Products**

247.     The Blue Plans' *per se* illegal and anticompetitive actions have created Competitive Restraints, halted the entry of Blue Plans and their non-Blue branded subsidiaries into markets outside of their own designated ESAs, increased ASO Fees paid by self-funded accounts such as Plaintiffs, and deprived Plaintiffs of an opportunity to purchase services provided by one or more Blue Plans and/or their non-Blue branded affiliates at lower rates than would be present in a market free from the non-price restraints imposed by Defendants' anticompetitive conduct.

248.     The implementation of ESAs eliminated competition between Blue Plans and therefore removed downward pressure on ASO contract price ranges.

249.     Plaintiffs were and continue to be damaged by paying supra-competitive ASO Fees, which are to be calculated by estimating the ASO Fees that would have been competitively available to Plaintiffs but for the antitrust violations of the individual Blue Plans and BCBSA.

250.     The Competitive Restraints imposed by Defendants' anticompetitive conduct also has the effect of reducing consumer choice and detracting from any or all innovation in the

healthcare products and services purchased by Plaintiffs.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Sections 1 and 3 of the Sherman Act (Against All Defendants)

251.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 235 as if fully rewritten herein.

252.     The statute of limitations has been tolled for all self-funded accounts that are putative members of the class action initiated, by information and belief, in *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, N.D. Ala., Master File No. 2:13-cv-20000-RDP. Because Plaintiffs fall within that class, the statute of limitations has been tolled since at least in or about February 2012.

253.     The License Agreements, Membership Standards, and Guidelines agreed to by the Blue Plan Defendants represent horizontal agreements entered into and among the Blue Plan Defendants, all of whom are competitors or potential competitors in the market for commercial health insurance products in the United States.

254.     Each of the License Agreements, Membership Standards, and Guidelines entered into between BCBSA and the Blue Plan Defendants represents a contract, combination and/or conspiracy within the meaning of Sections 1 and 3 of the Sherman Act.

255.     Through the License Agreements, Membership Standards, and Guidelines, BCBSA and the Blue Plan Defendants have agreed to divide and did allocate geographic territories for the marketing and sale of commercial health insurance products within exclusive service areas for each of the separate Blue Plan Defendants. In doing so, the Blue Plan Defendants and BCBSA conspired to restrain trade in violation of Sections 1 and 3 of the Sherman Act. These market

allocation agreements are *per se* illegal under Sections 1 and 3 of the Sherman Act.

256.    The market allocation agreements entered into between the Blue Plan Defendants (executed and enforced by the BCBSA License Agreements and the Membership Standards and Guidelines) are anticompetitive. The conspiracy to allocate markets and restrain trade adversely affected Plaintiffs because they were and are self-funded accounts and were and are deprived of the opportunity to purchase health benefit products (including administrative services) from a lower cost competitor and/or at a price set by a market free from the non-price restraints imposed by the alleged anticompetitive agreements. Plaintiffs were also deprived of a wider choice of healthcare products and services, as well as of increased innovation within the commercial health insurance products industry. As a result of Defendants' market allocation agreement and the associated Competitive Restraints, the Blue Plan Defendants have not marketed their individual and/or commercial health benefit products in other Blue Plan Defendants' respective ESAs and have been foreclosed by their agreements and restraints from doing so.

257.    The *per se* illegal agreements have yielded substantial and unreasonable anticompetitive effects, including but not limited to the following: (1) a reduction in the number of Blue-Branded licensed commercial health insurance product companies competitive with the Blue Plan Defendants within their individual ESAs; (2) the unreasonable limitation upon the entry of competitor commercial health insurance product companies into New York; (3) the permitting of the Blue Plan Defendants to not only maintain, but also substantially enlarge their already strong market power in their individual ESAs, including in the Southern District of New York; (4) the permitting of the Blue Plan Defendants to supra-competitively raise the ASO Fees paid by Plaintiffs by artificially inflated, unreasonable and/or supra-competitive amounts; and, (5) a deprivation of Plaintiffs' full benefits of free and open competition.

258.    As a direct and proximate result of the Blue Plan Defendants' continuing violations of Sections 1 and 3 of the Sherman Act as described in this Amended Complaint, Plaintiffs have suffered and continue to be threatened with suffering injury and damages in an amount to be proven at trial. These damages consist of, *inter alia*, having paid artificially inflated, unreasonable, and/or supra-competitive ASO Fees to Anthem, Inc., d/b/a in the Southern District of New York as Empire Blue Cross Blue Shield. These ASO Fees were higher than Plaintiffs would have paid but for the Sherman Act violations of Defendants. These damages further consist of being deprived of the opportunity to purchase commercial health insurance products from one or more of the other Blue Plan Defendants and/or their non-Blue Plan branded programs at a rate lower than that in a market free from the Competitive Restraints furthered by Defendants' illegal conduct. As stated above, Plaintiffs have also been deprived of consumer choice and increased innovation.

## COUNT II
### Violation of Section 2 of the Sherman Act (Against All Defendants)

259.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 235 as if fully rewritten herein.

260.    The statute of limitations has been tolled for all self-funded accounts that are putative members of the class action initiated, by information and belief, in *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, N.D. Ala., Master File No. 2:13-cv-20000-RDP. Because Plaintiffs fall within that class, the statute of limitations has been tolled since at least in or about February 2012.

261.    The License Agreements, Membership Standards, and Guidelines agreed to by the Blue Plan Defendants and BCBSA, as well as meetings between the Blue Plan Defendants and attempts by the Blue Plan Defendants to enforce policies challenged in this Amended Complaint, represent overt acts in furtherance of the Blue Plan Defendants' efforts to monopolize the national

market for commercial health insurance products, including the market in the Southern District of New York.

262.    As a direct and proximate result of the Blue Plan Defendants' continuing violations of Section 2 of the Sherman Act described in this Amended Complaint, Plaintiffs have suffered injury and seek damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that final judgment be entered against each Defendant declaring, ordering, and adjudging that:

(a)    The aforesaid combinations and agreements unreasonably restrain trade and are illegal under Sections 1, 2 and 3 of the Sherman Act, 15 U.S.C. § 1, 2 and 3;

(b)    Each Defendant be permanently enjoined from engaging in, enforcing, carrying out, renewing, or attempting to engage in, enforce, carry out, or renew the agreements in which it is alleged to have engaged, or any other agreement having a similar purpose or effect in violation of Sections 1, 2 and 3 of the Sherman Act, 15 U. S.C. § 1, 2 and 3;

(c)    Each Defendant eliminate and cease enforcing all Competitive Restraints and be prohibited from otherwise acting to restrain trade unreasonably;

(d)    Plaintiffs be awarded damages, their costs of this action, reasonable attorneys' fees, and such other relief as may be appropriate and as the Court may deem proper; and

(e)    **Plaintiffs demand a trial by jury of all issues properly triable thereby.**

Dated: December 1, 2022                    Respectfully submitted,

***s/ Wilson F. Green***         
Wilson F. Green
One of the Attorneys for Plaintiffs
**OF COUNSEL:**
**WILSON F. GREEN LLC**
301 19th Street North, Ste. 525
Birmingham, Alabama 35203
(205) 722-1018
wilson@wilsongreenlaw.com

Regina Calcaterra
Michael Liskow
Anjori Mitra
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Fl.
New York, NY 10036
Telephone: (212) 899-1760
rcalcaterra@calcaterrapollack.com
mliskow@calcaterrapollack.com
amitra@calcaterrapollack.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing is being filed and served using the Court's CM/ECF Filing System, which shall effect service of process on all counsel.

*s/ Wilson F. Green*
OF COUNSEL